# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **JOYCE CAVETTE, o/b/a S.C., a minor,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | Case No. 08-2271 |
| **MICHAEL J. ASTRUE,** ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

# ORDER

In February 2007, Administrative Law Judge (hereinafter "ALJ") Alice Jordan denied Plaintiff Joyce Cavette's application for supplemental security income on behalf of her daughter S.C., finding that S.C. was not disabled. In August 2008, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. In November 2008, Plaintiff filed a Complaint for Judicial Review (#3) of the final decision by the ALJ denying the application. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In April 2009, Plaintiff filed a Motion for Summary Judgment or Remand (#16). In July 2009, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#21). In August 2009, Plaintiff filed a Reply To the Commissioner's Memorandum in Support of Motion for Summary Affirmance (#23). After reviewing the administrative record and the parties' memoranda, this Court **GRANTS** Plaintiff's Motion for Summary Judgment or Remand (**#16**).

### I. Background
### A. Procedural Background

In December 2003, Joyce Cavette filed an application for supplemental security income benefits on behalf of her daughter S.C, alleging an onset date of December 1, 1997. In April 2004, the Social Security Administration denied the application initially and again upon

reconsideration in August 2004. On Plaintiff's request, the ALJ held a hearing on February 1, 2007. The claimant, S.C., was represented by counsel at the hearing. On February 22, 2007, the ALJ denied the application for benefits. The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. After the Social Security Administration granted Plaintiff's request for more time to file a civil action, Plaintiff timely filed a Complaint for Judicial Review (#3) in this Court in November 2008, requesting remand pursuant to sentence six or, alternatively, pursuant to sentence four of 42 U.S.C. § 405(g).

**B. Proposed New Evidence**

Regarding Plaintiff's request for a sentence six remand, the proposed new evidence includes the following:

1) Dr. Roselin Arunachalam's report from an outpatient therapy session at Mental Health Center of Champaign County dated February 1, 2007. (R. 853.) Dr. Arunachalam diagnosed S.C. with attention deficit and hyperactivity disorder (hereinafter "ADHD"), learning disorder, mood disorder, and a history of conduct disorder. Dr. Arunachalam rated S.C. to have a Children's Global Assessment Score (hereinafter "CGAS") of 45.

2) Hospital records regarding S.C.'s involuntary admission to Riverside Medical Center's Mental Health Unit dated March 10, 2007, to March 14, 2007. (R. 755-852.) Dr. Ayoade's clinic notes dated March 10, 2007, state as follows: "[B]ecause of her past history of being on Lexapro and also Risperdal, history of aggression, and history of getting angry easily, we will consider diagnosis of Bipolar strongly in her." (R. 776.) The discharge notes, dated March 14, 2007, included diagnoses of ADHD, oppositional defiant disorder (hereinafter "ODD"), and depressive disorder. (R. 765.)

3) Dr. Arunachalam's report from an outpatient therapy session at Mental Health Center of Champaign County on March 16, 2007. (R. 854.) Dr. Arunachalam diagnosed S.C. with ADHD, learning disorder, mood disorder, and a history of conduct disorder. Dr. Arunachalam rated S.C. as having a CGAS of 45.

4) Hospital records regarding S.C.'s admission to Riverside Medical Center's Mental Health Unit dated May 4, 2007, to May 15, 2007. (R. 552-754.) S.C.'s discharge diagnoses included ADHD and bipolar disorder. (R. 554.)

2

## II. Standard of Review

Sentence six of 42 U.S.C. § 405(g) allows the Court to remand a case to the Commissioner "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Evidence is considered "new" for purposes of sentence six if it was not in existence or available to the claimant at the time of the administrative proceeding. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). Evidence is considered "material" if there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. *Id*. Thus, the evidence must relate to the claimant's condition during the relevant time period encompassed by the disability application under review. *Id*. Good cause exists where a claimant demonstrates a sufficient reason for failing to incorporate the evidence into the record during the administrative proceeding. *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993).

## III. Discussion

Plaintiff seeks remand so that the ALJ can consider the reports from Dr. Arunachalam and Dr. Ayoade and the hospital records from S.C.'s two admissions to Riverside Medical Center's Mental Health Unit. Defendant does not dispute that Plaintiff's proposed evidence qualifies as "new." Defendant also does not challenge that Plaintiff had good cause for failure to incorporate the evidence into the record in the prior administrative proceeding. However, Defendant contends the new evidence is not material.

Plaintiff argues that the proposed evidence is material because the doctors' reports from Feb. 1, 2007, to May 15, 2007, are "connected to [S.C.'s] ongoing and longstanding mental limitations" (#18, p. 12), and thus relate to S.C.'s condition at or before the ALJ's decision. Plaintiff contends that S.C.'s bipolar diagnosis "accounts for symptoms and directly refutes the ALJ's contention throughout her decision that [S.C.] is intentionally misbehaving and could control her symptoms." (#18, p. 12.) The bipolar diagnosis "explains [S.C.'s] behavioral and

3

emotional issues and demonstrates that they are beyond her control, undermining the premise of the ALJ's entire decision." (#18, p. 12.) Additionally, Plaintiff asserts that Dr. Arunachalam's finding that S.C. had a CGAS score of 45 undermines the ALJ's determination that S.C.'s condition was stable. As a result, Plaintiff contends that there is a reasonable probability that the ALJ would have reached a different conclusion had she considered the evidence.

Defendant responds that although the February 1, 2007, report from Dr. Arunachalam does relate to S.C.'s condition at or before the ALJ's decision, there is no reasonable probability that the report would change the ALJ's decision because it revealed no new information to the ALJ.

Regarding the records from S.C.'s March 2007 hospitalization, Defendant specifically contends that evidence of this hospitalization does not relate to S.C.'s condition at or before the time of the ALJ's decision because it occurred after the ALJ's decision on February 22, 2007. Defendant asserts that there is no reasonable probability that the hospital records would change the ALJ's decision because S.C.'s diagnoses of ADHD, ODD, and depressive disorder are not new. Defendant also asserts that even if the hospitalization records show that S.C.'s condition had gotten worse, that worsening occurred after the ALJ's decision and therefore does not relate to S.C.'s condition during the relevant time period encompassed by the application under review. Defendant also suggests that external traumatic experiences caused S.C.'s condition to worsen, referring to evidence that her uncle sexually abused her in January 2007, and DCFS's subsequent action of removing S.C. from her home and placing her with a foster family shortly before her March 2007 hospitalization.

Regarding Dr. Arunachalam's March 16, 2007, report, Defendant contends that it is not material because Dr. Arunachalam did not note any disabling behavioral limitations during the appointment. Thus, there is no reasonable probability that the report would have changed the ALJ's decision.

Defendant contends that the records from S.C.'s May 2007 hospitalization are not material because S.C.'s bipolar diagnosis during her May 2007 hospitalization shows a worsening of her condition after the ALJ's decision caused by sexual abuse and removal from her home. Therefore, Defendant asserts, the bipolar diagnosis does not relate to S.C.'s condition during the relevant time period. Defendant also contends that there is no reasonable probability that the bipolar diagnosis would have changed the ALJ's decision because it is a "one-time diagnosis" and "no other doctors of record since [S.C.] filed her application for SSI in December 2003 had ever noted Bi-polar disorder as a diagnosis." (#21, p. 23.) Defendant also states that the diagnosis was "equivocal" (#21, p. 23) based on two pages of the record. First, Dr. Ayoade's admission evaluation on May 10, 2007, stated that she would consider a diagnosis of bipolar disorder (R. 563); second, another admission form included the notation "bipolar?" and a report that eight of S.C.'s ten answers on a bipolar questionnaire indicated that she had bipolar disorder. (R. 715.) Defendant contends that these records show that the diagnosis was equivocal, apparently because S.C.'s doctor stated that she would "consider" a bipolar diagnosis and because a question mark followed the word "bipolar."

This Court agrees that the proposed evidence qualifies as new evidence under sentence six of 42 U.S.C. § 405(g) because it was not in existence at the time of the ALJ's hearing. *See Schmidt*, 395 F.3d at 742. Similarly, Plaintiff had good cause for not incorporating the proposed new evidence into the hearing record because the new evidence was not available at the time of the hearing. *See Sample*, 999 F.2d at 1144; *Sears v. Bowen*, 840 F.2d 394, 399 (7th Cir. 1987). After reviewing the evidence and the parties' arguments, the Court concludes that Plaintiff's proposed evidence is material because (1) it relates to the claimant's condition during the relevant time period encompassed by the disability application under review, and (2) there is a reasonable probability that the ALJ would have reached a different conclusion had the evidence been considered. *See Schmidt*, 395 F.3d at 742.

Regarding whether new evidence relates to a claimant's condition during the relevant time period encompassed by the disability application under review, the Seventh Circuit court has stated that "medical records postdating the hearing and that speak *only* to the applicant's

5

current condition, not to his condition at the time his application was under consideration by the Social Security Administration do not meet the standard for new and material evidence." *Id.* (emphasis added). Here, however, the proposed evidence does not address only S.C.'s current condition. Rather, it explains her symptoms and conditions at or before the ALJ's decision in addition to describing her current condition. When Dr. Ayoade first considered a bipolar diagnosis for S.C., she stated that "because of [S.C.'s] past history of being on Lexapro and also Risperdal, history of aggression, and history of getting angry easily, we will consider diagnosis of Bipolar strongly in her." (R. 776.) S.C.'s doctor thus incorporated S.C.'s prior medical history and symptoms into her eventual bipolar diagnosis. The Court disagrees with Defendant's assertion that the proposed evidence only shows that S.C.'s preexisting condition became worse after the ALJ's decision. Defendant suggests that the trauma of sexual abuse at least partly caused S.C.'s condition to worsen. This abuse actually occurred in January 2007, a month before the ALJ's decision, so it is unclear how this evidence supports Defendant's argument that the abuse only affected S.C.'s condition after the relevant time period.

Moreover, there is a reasonable probability that the ALJ would have reached a different decision had the ALJ considered the proposed evidence because the ALJ's decision was based on her determination that S.C. could actually control her behavior if she wanted to, and that S.C.'s misbehavior was attention-seeking. The ALJ stated that "[S.C.] carries diagnoses of oppositional defiant disorder and conduct disorder. However, despite all of her behavior problems, the school records indicate that the claimant can be well-behaved if she wants to be." (R. 23-24.) In discussing S.C.'s skills in interacting and relating with others, the ALJ added that "while claimant's behavior is often quite poor, she can behave herself and get along with others when she wants." (R. 34.)

In discussing S.C.'s cognitive abilities and ability to acquire information, the ALJ stated that "[w]hile she is receiving special education services, the eligibility for these services is based on her behavioral problems, not a documented learning disability . . . . It is hardly surprising that a student's grades would suffer if she was routinely missing class and misbehaving when she was in class." (R. 28.) Regarding S.C.'s capacity to attend and complete tasks, the ALJ

6

remarked that "what problems are present in this domain [Attending and Completing Tasks], are largely related to her behavioral issues rather than a physical or mental inability to sustain attention or complete tasks." (R. 30.) Deciding that ADHD was "probably not a valid diagnosis" (R. 18), the ALJ stated: "[I]t is likely that any element of inattention is a conscious action geared towards garnering the attention of others rather than an actual inability to maintain focus for sustained periods." (R. 19.)

Because the ALJ's conclusion that S.C. could control her behavior was so fundamental to her decision, there is a reasonable probability that the new evidence of a bipolar diagnosis would change the ALJ's decision. As Plaintiff argues, a bipolar diagnosis may account for S.C.'s "behavioral and emotional issues and demonstrate[] that they are beyond her control." (#18, p. 12.) Defendant's arguments that there is no reasonable probability that the bipolar diagnosis would change the ALJ's decision are unconvincing. Defendant notes that S.C. has never been diagnosed with bipolar disorder before, but this is precisely the reason that this evidence qualifies as new, rather than cumulative. Furthermore, the diagnosis does not appear to be equivocal, contrary to Defendant's assertions. Defendant cites to two pages from S.C.'s hospital admission record as proof of an equivocal diagnosis. Importantly, these are from the admission record, where S.C.'s doctor was considering the diagnosis. Defendant does not refer to the discharge notes, where S.C.'s doctor made a definitive diagnosis. (R. 554.) The record does not show that the diagnosis was equivocal. If anything, the record demonstrates that S.C.'s doctor was meticulous in diagnosing S.C. with bipolar disorder.

Based on the case law and facts of this case, the Court concludes that Plaintiff has established that the proposed evidence qualifies as material evidence under sentence six of 42 U.S.C. § 405(g). Accordingly, the Court grants Plaintiff's motion.

### IV. Summary

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment or Remand **(#16)** pursuant to sentence six of 42 U.S.C. § 405(g).

ENTERED this 15th day of March, 2010.

s/DAVID G. BERNTHAL  
UNITED STATES MAGISTRATE JUDGE